Good morning, and welcome to the Illinois Appellate Court. I believe we have one case on the call for today. I remind the lawyers that when the case is called, I'd like you both to state your names to the record, and then when you step up, state your name again before you make your argument to the court. You'll be given ten minutes to argue, and if the court has questions, we'll go longer than that. We'll see how it goes. You'll be given whatever time you need, and five minutes, ten minutes as well, counsel, five minutes for your rebuttal. All right, would you call the case, please, madam? And your names, please. All right, gentlemen, I understand there's a motion that has not been ruled on relative to supplying supplemental authority to the court, is that right? And it's your motion, counsel. Do you have any comment or objection? All right, we'll be granted then. Thank you very much. All right, Mr. Mallon, you ready to go? Good morning, your honors. May it please the court, my name is Daniel Mallon. I represent the minor defendant, Stephen Cone. There's only one issue here pending today, and that is whether Cone's sentence is unconstitutional. Cone was 17 years old when he committed the offense, yet he was subjected to the same mandatory penalties that apply to adults. Specifically, he faced a mandatory minimum of 20 years for murder, and he was, on top of that, required to receive a mandatory 20-year firearm. And, of course, under the Illinois Truth in Sentencing laws, Cone is required to serve every day of his 40-year sentence. He has no chance of being released until he is nearly 60, until he's 57 years old. It's our position that this sentencing scheme triggered the protections of the United States Supreme Court's recent decision, Miller v. Alabama. Counsel, can I ask you, do you think Miller says that under the Constitution, all children are different? Yes. And then, are there any exceptions to that? No. No exceptions whatsoever? That under the Constitution, children are different, at least when it comes to sentencing. Miller said that under the United States Constitution, children are categorically different. My defendants under the age of 18 are categorically different than adults when it comes to sentencing. Okay. And does that apply in the argument versus the forum that's used versus the sentencing? The same, or? Well, we're only challenging the sentencing today. I understand that. So, I mean, the argument, I believe under Miller, it's really focused on the sentencing. They actually distinguish between the transfer statutes dictating what forum a minor defendant is going to be tried and sentenced in. But when it comes to actual sentencing, yes, I mean, Miller does say that all children are categorically different. And, I mean, in that case and the facts before it, the court held that a sentencer must have discretion before imposing a natural life sentence. Can I ask a question? Sure. Your opponent suggests that the Illinois Supreme Court has a case called Peoples v. Patterson before it to be argued in this term, in May of this year, and it's this exact issue that they're going to decide. Is that true? The exact issue? No, I don't believe the exact issue. What's different about it? Well, Patterson, I believe Patterson is cross-appealed, and they're going to be arguing it. In Patterson, I believe it's only the gun add-on that's going to be argued. I know there's three cases pending in the Illinois Supreme Court. There's Jenkins, Patterson, and Peoples v. Pacheco. Yeah, and they indicate here that the people wish to inform the court in addition to Peoples v. Pacheco and Peoples v. Jenkins, this issue is currently pending before the Illinois Supreme Court in Peoples v. Patterson to be argued in May of 2014. If the Supreme Court is going to address this in May, why are we even listening to this appeal? Why don't we just wait? Well, this court, yes. I mean, all these issues are going to be pending in the Illinois Supreme Court, are pending in the Illinois Supreme Court. They are pending. Yes. So why don't we just wait until the Supreme Court decides them, and then it becomes a summary order, doesn't it? Yes. Either we affirm it or we reverse it based on what they do. That's correct, yes. So what do we do? Right now, there's no authority in the Illinois Supreme Court on this issue. We understand that, but, I mean, it's there. So the question that I suppose I'm answering is why are we here? Well, I mean – Oh, no, we brought you here. I'm just wondering why we're here. Well, I mean, right now there's no authority in the Illinois Supreme Court. So what do you suggest we do with this case? Listen to your argument and then wait until the Supreme Court decides their case before we issue an opinion? Yes. Or are we going for you? Well, this court can do that, or it can issue an opinion before the Illinois Supreme Court. All right. Let me – you have a client here, and he has a right to have his case heard, and he has a right to have us hear it. Yes. All right. I looked at everything. I'm not sure it raises the same issues. And I'm also – and I think one of the issues that's out there that perhaps isn't focused on in the Illinois Supreme Court cases is the state constitutional issue. Okay. All right. And you gave us in the supplemental motion the Iowa Supreme Court case. Okay. All right. And if you look at the aftermath of the three U.S. Supreme Court cases, all right, it seems that the U.S. Supreme Court was unusually precise in trying to limit the scope of its ruling. And if you look at what comes after those three, there have been very, very few cases that have decided to expand that. Iowa is an exception, and they did it under their state constitution. Correct. And you argue it in the brief. It's there. Yes. And I wonder if you could touch on the state constitutional issue here, because in Illinois, our constitution reads differently than the U.S. constitution. There are words that are different. Yes. And they are more pro-defendant. Yes. Than what is in the U.S. constitution. Yes. We don't have cruel and unusual. Our state constitution talks about the proportionality. Correct. How does that affect this case? Well, if this court could find that the provisions, the sentencing scheme, is unconstitutional underneath the Illinois constitution. On what theory? Proportionality? Proportionality, yes. The Supreme Court has shot down that theory every time you've brought it to them. Well, that was, I believe, in the context of automatic transfer. Yes, but I have never read a Supreme Court decision where they have reversed the case based on proportionality. And I believe – Have you? Sorry? Have you? Well, no, but the Illinois Supreme Court decisions, at least addressing automatic transfer, do predate all the Miller, Graham, and Roper. And yes, I mean, this court could hold that the Illinois constitution does provide more protections above and beyond the amendment. And it could hold that the sentencing scheme is unconstitutional underneath the Illinois constitution, just as the Iowa court did. The Iowa court did rely on all the reasoning of Miller, the fundamental principle of Miller, that children are, in fact, different when it comes to sentence. So, I mean, just as this court – or just as the Iowa court did, I would suggest that this court, yeah, can certainly hold that Stephen Cohn's sentence is unconstitutional underneath the Illinois constitution. Could you comment on how the fact that Judge Joyce sentenced your client to the minimum of 20 on the murder and the minimum of 20 for the add-on was the least – was the most generous sentence he possibly could have imposed. Is that right? Absolutely. And I think the record shows that – I don't think there's any doubt that Judge Joyce would have imposed a lesser sentence if he could. Or, I mean, he specifically commented on, you know, how the system when it comes to truth in sentencing is broken. He went on at length on how, you know, up until the early 90s, defendants could earn day-for-day credit even on their murder sentences, and thus they had an actual motivation to rehabilitate themselves in prison. And now, he says, an individual goes to the penitentiary, and they absolutely have no reason to avail themselves of any of the services in the prison because they have to serve every single day of their sentence. And I think if Judge Joyce had any discretion, he would have either imposed a lesser sentence, lesser than the 40 years, or at the very least, he would have given Stephen Cohn an opportunity to demonstrate his rehabilitation. Remember, we're not the legislature. Well, that's correct. And Judge Joyce commented, too, yes. And this is your burden here, right? As we say around here a lot, if we're going to rule in your favor, we have to write something. Okay. And we have to come up with a doctrine and have it be self-contained and make sense and be workable. Of course. What are we supposed to write here? Well, I would suggest that this court should write, I mean, there's a fundamental principle that has repeatedly been reaffirmed. That is, children are different when it comes to sentencing. For the reasons stated in Miller. And do we say it's 30 more years or 20 more years? See, that's the problem. Well, I think the easiest. Where do we draw the line? The easiest remedy would be strike down, make the mandatory add-ons discretionary, and make the truth and sentencing statutes discretionary. Especially the truth and sentencing statutes, because that really goes to the heart of Miller and the problem of making penalties mandatory on juveniles. So if you're saying we strike down the truth in sentencing, meaning that 40 actually is 40, right? Yes. Then what do we do? We just engraft the good times served from some other statute and say it applies? Revert back to the statute as it existed before the change in truth in sentencing. At least when applied to juveniles. Am I correct? Maybe I missed something here. Is your entire proportionality argument based upon Miller and Graham? Yes. I mean. Miller and Graham are not Illinois decisions. Well, I mean, that's what Iowa did. They took the concept from Miller and Graham and used it to. We understand that. The question that I have is, if the only thing that you've argued is Miller and Graham, how can it honestly be said that you've made an argument of the Illinois Constitution other than made the Miller and Graham argument, which had nothing to do with the Illinois Constitution? There's also Leonel, where the Illinois Supreme Court, in an as-applied challenge, struck down a mandatory life sentence. As applied to that one defendant, where they, I mean, same principles. But there's no question that there's this one set of rules for mandatory life sentences. That's not this case. This case has nothing to do with mandatory life sentences. You're talking about a mandatory minimum. Yes. And the plethora of authority out of the First District says there's nothing wrong with those, and they don't violate Miller or Graham, and that's that. Now, the only one that can change that, or I suppose we could if we wanted to, or we could disagree with our colleagues, the only one that's going to change that is the Supreme Court. Yes. Or they've got it. Yes, and they do have it. But, again, I mean, I'm here on behalf of Stephen Cohen today, and this Court, I would ask, doesn't have to wait for the Illinois Supreme Court to decide that decision. Well, I mean, we know we don't have to wait, but why wouldn't we? I mean, if we don't wait to issue the opinion, we certainly aren't going to issue a petition for re-hearing, are we, and wait until it comes down. So why would we go through the trouble of issuing an opinion if the Supreme Court is going to solve this within the year? Well, practically speaking, and – I mean, you're getting a day, of course, you're getting the argument. Yes. But either way this goes, it goes the way the Supreme Court says it goes in Illinois now, I would believe. I mean, this Court might be able to offer an opinion that provides some guidance for the Illinois Supreme Court. Well, I'm sure there are people who think we do that. I'm sure we don't. Are you familiar with Justice Appleton's dissent in Pachinko? Yes. And do you want to comment on that at all? I think it's well-reasoned. I mean, I think it makes perfect sense. Again, I mean, I think the focus on Pachinko was on the automatic transfer. I mean, they also did challenge the mandatory sentence. It was a very well-reasoned dissent. I was happy to read People v. Null because it's an incredible analysis of the whole issue and the cases involved in it. It's a really well-written case by the Iowa Supreme Court. And just by the other case, People v. Solis, they talk about a juvenile offender being found to be reformable. Now, that concept is not something that we have here in Illinois. A juvenile defendant being reformable? Oh, no, the concept is here, but exactly what does that mean? What's the description of it? How is that determined? I mean, that's what they use. Once a juvenile offender is found to be reformable, he cannot be sentenced to life without parole, blah, blah, blah. So, I mean, that whole standard that they have in California, using that case, we don't have that here. I haven't seen it in case law. No. Yeah. Okay. Thank you. But, I mean, California did rely on it. I think it was very telling that the California public court found Knoll to be so instructive to adopt the reason. And I know, I have to note, while it's not precedential, I mean, another division of this court did find State v. Knoll to be persuasive. I mean, it was in a Rule 23 order, but I think that case, I think, you know, it is a very well-reasoned case. I think there's no reason why this court should not find that to be persuasive. I think one thing I want to emphasize is we are just asking, we're not saying that a 40-year sentence, we're not saying the application of truth in sentencing is never appropriate for juveniles. Really, I mean, while it is an extension of Miller, it's not that great of an extension. We're just asking for a resentencing hearing where the juvenile goes down. I mean, I think it's pretty apparent from the record here that the trial judge, in his discretion, didn't believe Stephen Coates should be serving 40 years in prison. Let me focus on that point, though. You're asking for a resentencing hearing. Yes. And to be specific, you're asking us to find that the truth in, basically, the route we need to take to get there is the truth in sentencing statute goes out. Yes. So that somehow they get good time credit. Yes. Okay. Is that it? Well. Or that you're saying 20 is just too high for a murder? It's a real hard stretch to say 20 years is too much for a murder. I agree. But, well, no. I'm not saying 20 is too high for a murder. I'm saying a trial judge should have discretion. You're saying no mandatory minimums. Yes. I'm saying no mandatory minimums and no truth in sentencing. We have to knock the bars down for juveniles in order to find a year. Okay. Counsel, any other questions? Thank you very much. Thank you. Mr. Corbett. Good morning, Your Honors. Again, Douglas Harbath on behalf of the people of the State of Illinois. If I could just make one clarification at the outset, I believe it was Justice Hoffman pointed out that Patterson's pending. I actually am an attorney of record in Ronald Patterson. To be clear, Patterson is an automatic transfer case. The issues regarding Roper, Graham, and Miller are largely identical, but it does involve, as do Pacheco and Jenkins, they involve the automatic transfer statute in tandem with an arguably lengthy or a harsh sentence. So the arguments in those cases do involve an argument that's very similar in this case, that the defendant was subject to a harsh sentence and he was subject to a mandatory minimum sentence. And on that point, I think it's, and I believe Justice Hoffman pointed out, and counsel just sort of conceded that he's arguing that Miller operates to abolish all mandatory minimums, and Miller simply cannot be construed that way. I think a way to conceptualize that is that Miller, a case that involves life without parole, a mandatory life without parole, can now be applied to every single nonprobationable offense. And I did some research yesterday and discovered it was unknown to me that there's mandatory minimums for aggravated unlawful use of a weapon and unlawful use of a weapon by a felon. So unlawful use of a weapon by a felon is a two-year mandatory minimum sentence. So now the defense would take Miller, which is a categorical ban on a sentencing practice the most severe, and to use Miller's language, the harshest sentence available for juveniles, now suddenly applies to a two-year minimum sentence for a 17-year-old convicted of a gun offense. That case cannot be read, and Miller cannot be so broadly expanded to mean that. Well, I ask your opponent a question. Should we wait for the Supreme Court to decide, Patterson? I don't think this Court needs to wait. Obviously, Pacheco is a published decision. The First District itself has not issued a published decision, so not that this Court should be in the business of issuing an opinion just to be an advisory to the Supreme Court on a case that's pending, but I think there's enough authority out there, and I think, as Your Honor pointed out, the overwhelming majority – well, maybe not overwhelming, I don't want to overstate my case. The majority of other jurisdictions to address this issue have rejected the notion that Miller – No, I understand what the majority of other jurisdictions have done. My question is, will the Supreme Court, in your opinion, because you're the attorney there on this case, address the issues that are raised in this case? And if they're going to address this issue, and it's part and parcel of their case, why should we decide it? Why don't we just wait for them? This Court clearly could do that. No, but I mean, see, of what benefit would there be for us to decide this? Because, as I said, I think there's enough authority out there. I mean, of course, maybe I'm biased, but I think the Supreme Court is going to rule in our favor in that way on Patterson. But are they going to decide the issues we have? Let me ask it more precisely. Do either Patterson or Pacheco have the state constitutional issue? I do. Yes, they do. They do involve the proportionate penalties clause. But in that sense, it's almost a distinction without a difference, because the Supreme Court in Rodney H. has clarified that our proportionate penalties clause is construed in tandem. It's almost indistinguishable in terms of analysis. Well, let me contest you on that.  Because two years ago, in People v. Clemens, a decision by Justice Tice for the Supreme Court, they specifically said that the Illinois Supreme Court's prior analysis, that they were synonymous, was, quote, an overstatement, close quote. Okay. And then they quoted favorably from the comments of the KonKon delegate, who said, you know, we don't have cruel and unusual on the Illinois Constitution. We have completely different language, and it means more, and it's more pro-defendant, because when it was written in 1970, it was intended to be, quote, I'll say the spirit of the proposed amendment is in accordance with modern penology, close quote. And our Supreme Court, two years ago, got off the track of lockstep with respect to this issue, and said in Illinois, under our Constitution, proportionate penalties means something different than cruel and unusual. Okay. And it means something that's more capable to defend it. So I want you to tell me how, in light of what our Illinois Supreme Court has just said on this issue, that 40 years, absolutely positively mandatory for this, is within the guidelines of our Constitution. Specifically the Illinois Constitution, and not the federal Constitution? Exactly. That's my question. Well, first I would say the defense hasn't specifically raised that argument. Not that it's the issues not before this court, but I guess my response then would be, well, then you can't rely on Graham and Miller to guide this court's analysis on what it should do with regard to the sentence in this case, because those are strictly Eighth Amendment cases. They're categorized, as most of them are in the U.S. Supreme Court. Well, the Eighth Amendment still applies in Illinois, though. Absolutely. It does. It still limits the kind of punishment. So if Graham and Miller say X about what the Eighth Amendment categorically bans, which is the harshest, most severe sentence for those under 18, what does the Illinois Constitution do above and beyond that? I guess, is that Your Honor's question? What else is there that we have in Illinois? I guess my response would be, Our Supreme Court two years ago said that it means something. They said that in Illinois, defendants have greater rights than in other states that may not have the same state constitution. And yet they have these proportionate penalties. So if you've got a 17-year-old, you know, mandatorily convicted and sentenced for 40 years, does that violate our proportionate penalties clause? I'm going to argue that it does not. It's, I mean, the defense has not pointed to anything on that basis alone that would separate, not only separate it from the facts of Graham and Miller, but it would bring it within, it would essentially apply, as I sort of stated at the beginning of my argument, it would apply to all nonprobational offenses, all mandatory minimums, to use that analysis. So I think, as Your Honor pointed out when counsel was up here, is it 30 years, is it 40 years? And it's interesting that Your Honor said that, because there are a number of cases, Bunch and Henry and Wall, that actually have that exact language in the opinion, saying where do we draw the line? Is a 10-year sentence too long for a juvenile? Is it 20? Is it 30? I believe it was the Wall case that pointed out, well, what if we have a defendant that has convictions from three different jurisdictions and each of them in and of themselves is 10 years, not necessarily anything approaching a life sentence or even a de facto life sentence. Well, then when you put them together, it's 30 years, maybe the argument's getting stronger. Well, how do you create a legal rule? And Your Honor asked, well, we have to write an opinion. Obviously, you have to fashion a legal rule and draft an opinion that's going to hold up. So how do you, you cannot have an opinion that actually says that, well, it applies to this sort of nebulous range of sentences, and maybe it applies differently to consecutive terms. I mean, in Ronald Patterson, he was convicted of three counts of aggravated criminal sexual assault. So it was 12 plus 12 plus 12. His sentence was 36 years, to be served at 85%. So in this case, obviously murder, it's at 100%. There's just too many variables, I think, to issue, to say that like some of the cases have at the Supreme Court in Null in Iowa to say that, well, Graham and Miller can apply to essentially a de facto life sentence. And I'd like to make clear, the defendant does not make a de facto life sentence argument in this brief. And I think for good reason, because this is not a de facto life sentence. I mean, with a straight face, I can say this is, it is a lengthy sentence for a 17-year-old, to be sure. But it's also a serious offense. Counselor, is there any difference in the analysis, I ask your opponent, relative to the mandatory transfer versus the sentencing provision? Are the cases all the same? Do they overlap? They are different, Your Honor. And they're in different important ways, because the automatic transfer statute is a procedural mechanism, and I don't think I'm showing my hand in arguing this. It involves procedural mechanisms regarding the forum where the case will be tried, and it's not necessarily a punitive. While it may have a punitive effect, because it subjects the minor, the juvenile, to a long, without a doubt, it subjects them to a lengthier sentence. But that in and of itself doesn't make it a punishment statute. It doesn't trigger the Eighth Amendment. So that's the additional argument that Your Honors don't have in this case, because he was automatically an adult under Illinois law. I think it's important to point out on that point, the Illinois Supreme Court's decision in M.A., where they upheld the juvenile automatic transfer statute against due process and equal protection challenges, the Supreme Court expressly recognized that that subjects them to a lengthier sentence. So this isn't something that the Illinois Supreme Court is unaware of, or that the, certainly I think it would be a giant step to say that the Illinois legislature is unaware of it when they passed the automatic transfer statute. And that was the whole point of passing a law like that, or the mandatory transfer statute, which was at issue in P.H. All right, finish up, counsel. Okay, so for all those reasons, for those stated in our brief, we ask that this Court find that Miller and Graham are expressly limited to life without parole. And this Court should likewise hold that it does not affect the validity of the defendant's minimum sentence, his term of year sentence, and affirm his four-year sentence for murder. Counsel, thank you. Thank you. And five minutes if you need it, counsel. Counsel, give me your best argument, your Illinois State proportionality argument. Oh, yeah. Your Illinois State proportionality, or your proportionality argument under the, pardon me, under the Illinois Constitution. And after you make that argument, show me where you made it in your brief. We did. In our subject heading, we do cite that. You put a subject heading in, but did you quote cases? Did you actually argue the point in your brief? We did cite to the Illinois State Constitution. And that's all you did, but say the Illinois State Constitution violates no cases in support of it, no separate argument in the brief. We focused our argument more on the. Exactly, exactly. You made the eighth amendment in your brief. I would be happy to. Give me your best argument right now. Well, the argument is, in Miller, the principle, you know, Miller seems to be only that because juveniles are different, they must be sentenced differently. And it was the Chief Justice, John Roberts, in a dissent that says, there is no clear reason that principle would not bar all mandatory sentences for juveniles or any juvenile sentence as harsh as what a similarly situated adult would receive. And if this Court is hesitant to, under the eighth amendment, extend Miller beyond its facts, then, yes, it is certainly well within its authority to hold under the Illinois Constitution that based on that principle, the Illinois sentencing scheme is unconstitutional as applied to Stephen Cone. So this Court has no other questions. Counsel, thank you very much. Thank you.